UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

LARRY WARREN,

Plaintiff,

v.

WELLPATH, LLC,
MARION CO. SHERIFF'S OFFICE,
JOHN LAYON Sheriff,
ROBERT VASQUEZ Deputy,
JASON MCGAHA Deputy,
JOHN DOE #1,
JOHN DOE #2,
JOHN DOE #3,
JANE DOE,

Defendants.

No. 1:20-cv-02201-SEB-TAB

**Order Screening Complaint,
Dismissing Deficient Claims,
and Directing Issuance and Service of Process**

Plaintiff Larry Warren, currently an inmate incarcerated at the Indiana Department of Correction's Pendleton Correctional Facility, filed this 42 U.S.C. § 1983 action concerning alleged events at the Marion County Jail in Indianapolis, Indiana. Dkt. 1. He has been granted leave to proceed *in forma pauperis*, dkt. 5, and has now paid the assessed initial partial filing fee. Dkt. 7. The complaint is now ready for screening.

## I. Screening Standard

Because Mr. Warren is a prisoner, his complaint is subject to the screening requirements of 28 U.S.C. § 1915A(b). This statute directs that the Court shall dismiss a complaint or any claim within a complaint which "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

*Id.* To satisfy the notice-pleading standard of Rule 8 of the Federal Rules of Civil Procedure, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," which is sufficient to provide the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and quoting Fed. R. Civ. P. 8(a)(2)); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (same). The Court construes *pro se* pleadings liberally and holds *pro se* pleadings to less stringent standards than formal pleadings drafted by lawyers. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

## II. The Complaint

In his *pro se* complaint, Mr. Warren names as defendants (1) Wellpath, LLC; (2) the Marion County Sheriff's Office; (3) Sheriff John Layon; (4) Deputy Robert Vasquez; (5) Deputy Jason McGaha; (6-8) John Does #1-#3; and (9) Jane Doe. He seeks injunctive relief and compensatory and punitive damages. Dkt. 1. His complaint sets out two distinct series of events, the first from July 30 to August 3, 2018, and the second from August 13 to August 20, 2018. *Id.* The distinct sections are set out in pages 5-7 and 7-10. The paragraphs are numbered, but the numbering restarts in each section.

### A.      First Series of Events

On July 30, 2018, Mr. Warren was transported from the Pendleton Correctional Facility to the Marion County Jail to appear as a witness in another matter. During processing into the jail, Mr. Warren was denied water because the sink in his holding tank was broken. He breathed odors of sewage, vomit, feces, and body odors from being in a small holding cell for eight hours and another two holding cells for twelve hours. On July 30-31, 2018, Mr. Warren asked for water and medical care from John Doe #1, a deputy working in the processing area, but the request was

denied. Dkt. 1. at ¶ 4. On July 30, 2018, Jane Doe, a nurse employed by Wellpath, LLC, denied Mr. Warren's request for medical care. *Id.* at ¶ 5. By the time he testified in the unrelated Marion County case, Mr. Warren had spent twenty hours in processing without an opportunity to sleep. *Id.* at ¶ 7.

A Marion County judge signed an order on July 31, 2018, for Mr. Warren to be transported back to prison. However, he was not transported until August 3, 2018, which caused him additional harm from having to listen to "loud banging, noises, loud TV, yelling, screaming, and singing" for twenty-four hours a day from July 30 through August 3, 2018. *Id.* at ¶¶ 8-9. Mr. Warren's cell from July 31 through August 3, 2018, was lighted all day with a wall-level fluorescent light just four feet from his bunk *Id.* at ¶ 10. Deputies harassed him and would constantly wake him up to ask his name and number. *Id.* at ¶ 11.

Deputy John Doe #2, who worked on the R-6 cell block on August 2, 2018, at 4:30 p.m., harassed Mr. Warren for having his cell door ajar. He told Mr. Warren that he (John Doe #2) could "receive a write up for [Mr. Warren] leaving the door closed which is telling me you don't give a fuck about me." *Id.* at ¶ 13. When the deputy made his rounds, he would stare at Mr. Warren which would make Mr. Warren fear that harm would come to him. *Id.*

Mr. Warren asserts that former Sheriff John Layton was in charge of the Marion County Jail and maintained failed policies of "clock rounds, transportation, maintenance of the jail, and the exhausting time it takes to in-process at the jail," all of which harmed him from July 30 to August 3, 2018. *Id.* at ¶ 15.

During the same time period, Deputies John Doe #1, who worked in the in-processing unit, and John Doe #2, who performed clock rounds in R Block, were aware of Mr. Warren's "serious medical mental issues" and denied his numerous requests for health care. *Id.* at ¶ 16.

During his jail stay from July 30 to August 3, 2018, Mr. Warren was denied water, restroom breaks, proper insect control, proper clock rounds, proper sanitation, reasonable noise levels, proper cell lighting, suffered harassment, and was retaliated against. He asserts the improperly trained staff, failed policies and procedures, and a need to cut overhead costs by the Sheriff's Office and Wellpath, LLC, were the causes of the denial of proper health and mental care. *Id.* at ¶ 18.

**B.     Second Series of Events**

On August 13, 2018, Mr. Warren was being transported from prison to the Marion County Jail by Sheriff's Deputy Robert Vasquez. *Id.* at ¶ 2 (p. 8). During the transport, Deputy Vasquez stopped for thirty minutes and left Mr. Warren and others unattended with no proper ventilation and a malfunctioning air conditioning unit. *Id.*at ¶ 3. When the deputy returned, Mr. Warren informed him that he was ill and could not breathe, but the deputy denied medical treatment. *Id.*

Once at the Marion County Jail, Mr. Warren spoke to Nurse Jan Doe about his "physical issues." She said she would make sure Mr. Warren was seen and get treatment. *Id.* at ¶ 4. He was then placed in a holding tank for an extended period and forded to drink from an unsanitary sink and sleep on a dirty concrete floor. *Id.* at ¶ 5. Once at his cell, he again experienced loud banging, loud noises, loud television, yelling, screaming, and singing "nearly" twenty-four hours a day. *Id.* at ¶ 6. His cell was again lighted twenty-four hours a day. Gnats flew around the urine soaked toilet and floor. *Id.* The toilet emanated a nauseating stench of urine. *Id.* Mr. Warren was again harassed by deputies constantly waking him to ask his name. *Id.*

 Mr. Warren asserts that on many occasions he attempted to explain his physical and emotional state but he was harassed and denied any treatment. *Id.* at ¶ 7. He submitted his second request for mental health care on August 15, 2018. *Id.* at ¶ 8. A grievance addressing his skin issues was submitted on August 17, 2018. *Id.* at ¶ 10.

On August 20, 2018, while Mr. Warren was being shackled for transport back to prison he passed out, lost consciousness, and required emergency medical attention. *Id.* at ¶ 11. He was then transported back to prison by Deputy Jason McGaha and one other deputy. *Id.* at ¶ 12. Mr. Warren asked Deputy McGaha if he could sit in the area of the van behind the deputies but in front of the caged portion of the van, but Deputy McGaha declined the request. *Id.* at ¶ 13. When they arrived at the prison, Deputy McGaha parked at the front gate for twenty minutes and Mr. Warren went into shock. *Id.* at ¶ 14. He did not receive medical attention. *Id.* at ¶ 15.

Mr. Warren asserts that improperly trained staff, failed policies and procedures, and a need to cut spending by Wellpath, LLC, and the Marion County Sheriff's Office are the causes of the denial of medical care and proper transportation. *Id.* at ¶ 17.

## III. Discussion

Applying the legal standards set out in Section I and the substantive the law applicable to Mr. Warren's claims, some claims must be dismissed and one shall proceed.

### A. First Series of Events

The first series of events, beginning on July 30, 2018, and ending on August 3, 2018, are distinctly separate from the series of events beginning August 13, 2018. There is no allegation of continuing actions by any of the defendants to link the two series of events.

Mr. Warren filed this action on August 21, 2020. Dkt. 1. The complaint contains a certificate of service averring that it was electronically filed and served on August 19, 2020. *Id.*at 15. If the effective filing date of the complaint is August 19, 2020, that date is more than two years after the first series of events ended on August 3, 2018. The allegations of conduct made during the first period, July 30 through August 3, 2018, fail to state a claim upon which relief can be granted because they are barred the Indiana statute of limitations.

Suits under 42 U.S.C. § 1983 use the statute of limitations and tolling rules that states employ for personal-injury claims. In Indiana, the applicable statute of limitations period is two years. *See Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012); Ind. Code § 34-11-2-4. "While state law determines the length of the limitations period, federal law determines the date of accrual of the cause of action. For § 1983 purposes, a claim accrues when the plaintiff knows or should know that his or her constitutional rights have been violated. To determine when the claim accrues, a court must first identify the plaintiff's injury and then determine when the plaintiff could have sued for that injury." *Logan v. Wilkins*, 644 F.3d 577, 581-82 (7th Cir. 2011) (internal quotations and citation omitted).

Mr. Warren knew of his potential claims as they occurred. Therefore he could have brought suit as early as August 3, 2018. Therefore all claims arising from the first series of events, from July 30, 2018 to August 3, 2018, are **dismissed**.

**B. Second Series of Events**

In Mr. Warren's complaint asserting claims arising from August 13 through August 21, 2018, he begins with a long list of medical conditions which he asserts are ongoing and include, but not limited to, panic attacks, profuse sweating, shortness of breath, vomiting, dizziness, confusion, heart racing, and more. Dkt. 1 at ¶ 1 (p. 7). He adds that he suffers from multiple health and mental health issues and continues to take medications. *Id.* But he does not allege that something happened between August 13 and August 21, 2018, to cause these symptoms or conditions. Mr. Warren is disclosing these numerous conditions as context for the allegations against the defendants. *Id.*

The first event Mr. Warren alleges is when he was left in the transport van by Deputy Vasquez for thirty minutes with no air conditioning and improper ventilation and then denied

medical treatment when he became ill and could not breathe. This sufficiently pleads an Eighth Amendment claim that **shall proceed** against Deputy Vasquez.

For the remaining claims, the Court starts with the principle that the "Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations omitted); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (prison has duty to provide, *inter alia*, adequate sanitation and hygienic materials)). Mr. Warren must plead conditions that rise to the level of constitutional violations as defined by current law. Just as importantly, he must also plead some kind of injury flowing from the inhumane condition.

The mere experiencing of unpleasant conditions such as an unsanitary sink, a dirty floor, noxious odors, crowding, lighted cells at all times, being frequently awakened by deputies (for one week), without injury, are not conditions or conduct that rises to the level of a constitutional violation. Granted, an exposure to feces and urine has consistently been held to be a sufficiently serious constitutional violation, *see Myers v. Ind. Dep't of Corr.*, 655 F. App'x 500, 503–04 (7th Cir. 2016), but Mr. Warren does not plead an injury-in-fact. *See Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (rejecting plaintiff's claim where he "experienced considerable unpleasantness, [but] he suffered no physical harm"). Furthermore, short-term discomforts are generally insufficient to support a constitutional claim. *Lunsford v. Bennett*, 17 F.3d 1574 (7th Cir. 1994) (citing *Harris v. Flemming*, 839 F.2d 1232, 1234-46 (7th Cir. 1988)).

Additionally, Mr. Warren does not connect any of the conditions to a person who had knowledge of the condition and failed to take remedial steps. "Individual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v.*

*Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. . . . . A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")).

Mr. Warren's assertions that when he arrived at the jail on August 13, 2018, and told Nurse Doe about his conditions, to which she responded that she would see to it that he was treated, is too vague to state a claim for relief. Nothing in the complaint identifies a serious medical need of which Mr. Warren suffers and of which he asked Nurse Doe for medical attention, nor does he allege an injury from Nurse Doe's actions.

As to the assertions that Mr. Warren went into shock when he was returned to prison, there are no allegations that the van was left unattended or without air conditioning, or that Mr. Warren suffered an injury. "Shock" is a vague term and the Court cannot construe a constitutional injury simply from such a vague allegation.

Finally, Mr. Warren does not allege a particular policy, practice, custom, or habit of Wellpath, LLC, Sheriff Layton, or the Marion County Sheriff's Office to support his claims against them. Assertions, and even proof, of isolated incidents or acts of misconduct do not state a *Monell* claim. *J.K.J. v. Polk County*, 928 F.3d 576, 591 (7th Cir. 2019); *see also Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Glisson v. Ind. Dep't of Corr*., 849 F.3d 372, 378-79 (7th Cir. 2017) (en banc). A plaintiff must plead, and eventually prove, "'[a] series of violations'" and even "two incidents in one year is not enough." *J.K.J.*, 928 F.3d at 591 (quoting *Palmer v. Marion Cty.*, 327 F.3d 588, 596 (7th Cir. 2003). "The critical question under *Monell* . . . is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm

resulted from the acts of the entity's agents." *Glisson*, 849 F.3d at 379.  Nothing in Mr. Warren's complaint alleges sufficient facts to support a *Monell* claim.

For these reasons, the complaint is **dismissed** against Wellpath, LLC, the Marion County Sheriff's Office, Sheriff John Layon, Deputy Jason McGaha, John Does #1, #2, and #3, and Jane Doe.

### IV. Opportunity to Show Cause or File Amended Complaint

The claim against Deputy Robert Vasquez is the only viable complaint the Court has identified in the complaint. If Mr. Warren believes the Court has erred in its assessment of claims, or has overlooked a claim and/defendant, he shall have through **January 15, 2021**, in which to file a motion to reconsider that demonstrates why claims and/or defendants should be reinstated and allowed to proceed, or to file an amended complaint that cures the deficiencies identified in this Order.

### IV. Issuance and Service of Process

The **clerk is directed** pursuant to Federal Rule of Civil Procedure 4(c)(3) to issue process to defendant Deputy Robert Vasquez in the manner specified by Rule 4(d). Process shall consist of the complaint, dkt. 1, applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to terminate all defendants except Deputy Robert Vasquez from the docket.

The Court understands that Deputy Vasquez is an employee of the Marion County Sheriff's Office. If Deputy Vasquez does not waive service of summons, or is no longer employed by Marion County, counsel for Marion County or the Marion County Sheriff's office is requested to

provide the Court with the last known physical address of Deputy Vasquez where he may be served with summons. This information may be provided informally to the clerk.

**IT IS SO ORDERED**.

Date: 12/15/2020

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Larry Warren
230853
Pendleton Correctional Facility
Inmate Mail/Parcels
4490 West Reformatory Road
Pendleton, IN 46064

Deputy Robert Vasquez
Marion County Sheriff's Office
40 South Alabama Street
Indianapolis, IN 46204

Courtesy Copy to:
Office of Corporation Counsel
200 East Washington Street, Suite 1600
Indianapolis, IN 46204